**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JEFFREY MARTIN WILLIAMS, | ) | No. C 02-0307 PJH (PR) |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | ) ) | |
| ANTHONY LAMARQUE, Warden, | ) ) | |
| Respondent. | ) ) | |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Although the court granted petitioner's motion for an extension of time to file a traverse, he did not file one and the time to do so has expired. The case is ready for decision.

## BACKGROUND

A jury convicted petitioner of second-degree murder and being a felon in possession of a firearm. The trial court sentenced petitioner to prison for nineteen years to life. As grounds for habeas relief he asserts that: (1) jury misconduct occurred when two jurors discussed their knowledge of guns; (2) use of California Jury Instruction Number (CALJIC) 2.50.02 violated his due process rights because it enabled the jury to convict petitioner solely on the basis of prior offenses, and because no instruction was given as to the standard of proof for the prior offenses; and (3) use of CALJIC 17.14.1 denied the jury its nullification power and violated his due process rights because it interfered with the jury's privacy.

Petitioner does not dispute the following facts, which are summarized from the opinion of the California Court of Appeal. See Ex. D (California Court of Appeal Opinion) at 1-5.

Petitioner and his girlfriend, Tinisha Murphy, have been involved since high school. Tinisha had an infant son, Byron, when the relationship began and later she and petitioner had a daughter, Izhana. Although not his son, Byron called the petitioner "Daddy." Petitioner's cousin, Emisha Lyons, lived at Tinisha's house. The fatal shooting occurred on February 11, 1997 around 3:30 p.m. At about 3:50 p.m., the police received a call about a shooting at Tinisha's house. The police responded and found Tinisha dead on the kitchen floor; she was lying on her back with a kitchen knife in her right hand in a stabbing position. Tinisha was right-handed. Byron, now six years old, told the officers, "Daddy shot [M]ommy."

Byron testified at trial that the petitioner and Tinisha had been arguing in the kitchen when the shooting occurred. Byron was in the bedroom when he heard the shot and did not see the actual shooting. However, he did see the petitioner with a gun. Byron initially had told the police that he had seen the shooting.

The petitioner claimed the shooting was an accident. Three of his friends testified at the trial. Shaunise Day testified that a week after the shooting, the petitioner explained the incident in this way: he and his cousin, Emisha Lyons, had been sitting at the kitchen table and Tinisha came in, picked up the gun from the table, and asked how it worked. Tinisha said that if petitioner ever cheated on her, she would shoot him. Petitioner tried to take the gun from her, but she accidentally shot herself in the neck. Arlene and Rajoan Cole, two sisters, testified that they spoke to the petitioner after the shooting. Arlene Cole stated that petitioner insisted the shooting was an accident and that petitioner told her that Tinisha picked up the gun and as petitioner was trying to take it from her, the gun went off. Rajoan Cole similarly testified that petitioner told her he

2

had been trying to get the gun away from Tinisha when the gun accidentally discharged.

Emisha Lyons denied being present during the shooting. On the day of the shooting, she said that petitioner and Tinisha were arguing, but no more than usual. She had left the house that day to meet a friend. When she returned, she found Tinisha dead in the kitchen and she then took the children across the street and called the police.

Benjamin Marshall, a friend of petitioner, testified that petitioner, who was upset and confused, came to his house one afternoon in February. Petitioner told him that he had shot Tinisha in the head. Petitioner also said Tinisha had picked up the gun and he tried to grab it and it went off. Petitioner stated, "I shot her. I don't believe it happened."

The prosecution introduced testimony concerning prior domestic violence incidents between petitioner and Tinisha Murphy. Ravin Spicer testified that once the petitioner pointed a small automatic pistol at Tinisha and on another occasion pointed a rifle at Tinisha and said, "Bitch, I'll shoot you." Around Christmas of 1996, Spicer saw petitioner hit Tinisha on the arm with a rifle and threaten to kill her. Tinisha had a knife in her hand and tried to stab the petitioner, but another friend stopped her. Tinisha had also tried to throw some boiling water on the petitioner.

In August of 1996, police responded to a domestic violence call at Tinisha's house. Tinisha claimed that her young son had let petitioner in the house and that petitioner kicked her while she was sleeping. Petitioner pointed a gun at her and threatened to kill her. Petitioner also started to punch her and hit her with a broom.

On February 4, 1997, Tinisha called the police to claim that petitioner had "flashed" her. Trial testimony indicated that this term may mean "pointed a gun." Tinisha told the police that petitioner had a handgun.

The gun that killed Tinisha was never recovered, but the bullet found in her body was consistent with a thirty-eight caliber revolver. Although both Cole sisters had made

3

1 arrangements for petitioner to turn himself in, he fled the area. He was found a month
2 later in Detroit.

## DISCUSSION

A. <u>Standard of review</u>

A district court may not grant a habeas petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual determinations, <u>Miller-El v. Cockrell</u>, 123 S.Ct. 1029, 1041 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams (Terry)</u>, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. <u>See id.</u> at

409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 123 S.Ct. at 1041. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. Sumner v. Mata, 449 U.S. 539, 546-47 (1981); Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. Id.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 123 S.Ct. at 1041; see also Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case that of the California Court of Appeal. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

B.  Issues Presented

   1.  Juror Misconduct

Petitioner asserts that two jurors improperly discussed the strength a person needs to pull the trigger of a revolver.

   a.  Extrinsic Evidence

The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence presented at trial. Turner v. Louisiana, 379 U.S. 466, 472-73 (1965); Jeffries v. Wood, 114 F.3d 1484, 1490 (9th Cir. 1997) (en banc). Evidence not presented at trial is deemed "extrinsic." Marino v. Vasquez, 812 F.2d 499, 504 (9th Cir. 1987). Jury exposure to extrinsic evidence deprives a defendant of the rights to

confrontation, cross-examination and assistance of counsel embodied in the Sixth Amendment.  Lawson v. Borg, 60 F.3d 608, 612 (9th Cir. 1995).  That the extrinsic evidence comes from a juror rather than a court official or other party does not diminish the scope of a defendant's rights under the Sixth Amendment.  Jeffries, 114 F.3d at 1490.  However, the Ninth Circuit has held that "a juror's past personal experiences may be an appropriate part of the jury's deliberations." Grotemeyer v. Hickman, 393 F.3d 871, (Dec. 15, 2004) (quoting United States v. Navarro-Garcia, 926 F.2d 818, 821 (9th Cir. 1991).

      When requesting a new trial on grounds of juror misconduct, petitioner filed affidavits from two jurors to support his argument.  Juror Bradshaw declared that the jury discussed at length the possible ways the shooting could have occurred, including whether or not the gun went off accidentally.  CT (Clerk's Transcript on Appeal, Vol. 11) at 389.  Bradshaw stated that during the discussions, two jurors said they were familiar with firearms and shared their expertise about them.  Id.  These two jurors said that to pull the trigger on an automatic, you don't have to pull very hard, but to shoot a revolver you have to pull the trigger pretty significantly or have the hammer cocked.  Id.  This explanation of the trigger pull came up a couple of times.  Id.  Juror Stolze also filed an affidavit, which echoed much of Bradshaw's account.  Id. at 391.  Stolze said that one juror, named Tom, said that it takes a certain amount of strength to pull a revolver's trigger and it was his opinion that the gun did not go off accidentally.  Id.  Stolze did not remember any other juror explaining trigger pull to the jury.  Id.

      These discussions do not constitute extrinsic evidence.  A juror's past personal experiences may be an appropriate part of the jury's deliberations and jurors must rely on their past personal experiences when hearing a trial and deliberating on a verdict.  Grotemeyer, 393 F.3d at 878-80; Navarro-Garcia, 926 F.2d at 821.  However, in some instances the introduction of a juror's personal experiences may violate the Sixth

6

Amendment -- when, for instance, a juror reports the results of an experiment or conducts legal research. Grotemeyer, 393 F.3d at 878.

This case does not involve a juror conducting an experiment. See Marino, 812 F.2d at 504 (juror looking at her ex-husband's gun to see how hard you have to pull to shoot it constituted extrinsic evidence). Nor did the jurors do any independent research about the trigger pull issue. See Gibson v. Clanon, 633 F.2d 851, 855 (9th Cir. 1980) (jurors independently obtaining evidence from medical encyclopedia regarding rarity of defendant's blood type after judge ruled such evidence inadmissible). Nor did they bring extraneous documents to the deliberations. See United States v. Littlefield, 752 F.2d 1429, 1432 (9th Cir. 1985) (jurors bringing news article about tax fraud sentences to deliberations in a tax fraud case deemed extrinsic evidence); United States v. Vasquez, 597 F.2d 192, 193 (9th Cir. 1979) (jurors reading a court file containing inadmissible evidence constituted extrinsic evidence).

Rather, this case is closer to Grotemeyer. There a juror told the other jurors that the defendant committed the crime because of his mental condition, a statement she based on her experience as a medical doctor. 393 F.3d at 878. The court held that no Supreme Court authority holds that "such conduct amounts to a violation of [a defendant's] right of confrontation, of his right to an impartial jury, or of any other constitutional right." Id. The conduct was held not to "rise to the level of ... constitutional violations" such as conducting experiments or research, assuming it was improper. Id.

The jurors here were merely discussing their personal knowledge and opinions about the strength necessary to pull the trigger on a revolver – which is an example of the personal experiences that Grotemeyer allows jurors to bring to their deliberations.

The state appellate courts' rejection of this claim was not contrary to, nor an unreasonable application of, clearly established United States Supreme Court authority.

.      b.      Prejudice

In addition, the jurors' discussion did not prejudice the petitioner.  A petitioner is entitled to habeas relief only if it can be established that a constitutional violation had a "substantial and injurious effect or influence in determining the jury's verdict." Sassounian v. Roe, 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)); see Jeffries v. Blodgett, 5 F.3d 1180, 1190 (9th Cir. 1993) (same).  In other words, the error must result in "actual prejudice." Brecht, 507 U.S. at 637.

The case against the petitioner was strong.  The petitioner had told Benjamin Marshall, "I shot her. I don't believe it happened."  Petitioner also fled the area.  Further, Emisha Lyons testified that she was not present for the shooting, which directly contradicted the explanation of the events that petitioner gave to Shaunise Day.  More telling, the physical evidence undermined petitioner's claim that it was an accident. Tinisha was found gripping a knife in her right hand; thus it was unlikely that she, who was right-handed, was handling or trying to grab the gun when it went off.  And as the court of appeals noted, in finding lack of prejudice under a state standard, the weight of the trigger pull was not such an issue because petitioner's defense was not that he shot the victim by accident, but rather that the gun was in her hand and went off by accident – that is, whether the gun required a strong pull or not, under petitioner's version of the facts he was not guilty.  Ex. D at 15-16.

Thus even if the juror's information about the trigger pull constituted extrinsic evidence, that evidence did not have a "substantial and injurious effect or influence in determining the jury's verdict."  Sassounian v. Roe, 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).  Because petitioner has shown neither a constitutional violation nor prejudice, he is not entitled to habeas relief on this claim.

  2. CALJIC 2.50.02

Petitioner claims that instructing the jury pursuant to CALJIC 2.50.02 violated his right to due process by enabling the jury to convict petitioner solely on the basis of prior offenses, and because no instruction was given as to the standard of proof the jury should apply in determining whether he had committed the prior offenses.

The trial court instructed the jury using the pre-1999 version of CAJIC 2.50.02. It stated, in relevant part:

> If you find that the defendant committed a prior offense involving domestic violence, you may, but are not required to, infer that the defendant has a disposition to commit the same or similar type offenses. If you find that defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime for which he is accused.

Ex. D at 6.

To obtain federal collateral relief for errors in the jury instruction, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Estelle, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

Before considering petitioner's claims, it should be noted that the claims here are not equivalent to those discussed in Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004). In Gibson the court held that former CALJIC 2.50.01, coupled with 2.50.1, unconstitutionally lessened the burden of proof by allowing the "jury to find the [petitioner] committed the uncharged sexual offenses by a preponderance of the evidence and thus infer that he had committed the *charged* acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence." 387 F.3d at 821-23.

CALJIC 2.50.01, the instruction involved in Gibson, has to do with prior sexual offenses, but otherwise is identical to the instruction here, 2.50.02, which has to do with prior domestic abuse offenses. As the court of appeal here noted, the differences between the statutes are of no significance to the analysis.

What is significant, however, is that the trial court here did not give CALJIC 2.50.2, the domestic abuse analogue of 2.50.1. In Gibson the court said:

> Had the jury instructions ended with CALJIC No. 2.50.01, our inquiry would have ended with a denial of Gibson's petition. We would have assumed that the jury followed, with respect to the prior sexual offenses evidence, the only standard regarding burden of proof they had received: reasonable doubt. The trial court, however, went on to instruct the jury with CALJIC No. 2.50.1, which ascribed a lesser burden of proof for evidence of previous sexual offenses. The instruction specifically referenced CALJIC No. 2.50.01 and outlined the applicable burden of proof for the prior sexual offenses: Within the meaning of the preceding instructions the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses and/or domestic violence other than those for which he is on trial.

387 F3d at 822. That is, because the court here did not give an instruction stating that the previous offenses need be proved only by a preponderance, the error which gave rise to granting the writ in Gibson did not occur here. Instead, petitioner presents two unique claims.

First, he contends that the instruction allowed the jury to convict him of the present offense based solely on prior offenses. However, the trial court clearly told the jury that to return a verdict of guilty it must find, applying the "beyond a reasonable doubt" standard, that petitioner committed each of the listed elements of the offense. See CT (Clerk's Transcript on Appeal, Vol. 11) at 289; RT (Reporter's transcript) at 1191; CT at 315-338. The court also told the jury that its instructions were to be considered as a whole and in light of all the other instructions (CALJIC 1.01). Id. at 255.

Juries are presumed to follow their instructions. See Weeks v. Angelone, 528 U.S. 225, 234 (2000). Given that presumption, the jury here could not have convicted petitioner solely on the prior offenses, because the instructions required it to return a

verdict based on whether the elements of the crime had been proved. The court of appeal's holding that, given the instructions as a whole, "the jury would not have been misled by CALJIC No. 2.50.02" is not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

Secondly, petitioner complains that the trial court did not give an instruction telling the jury what standard of proof it should use in determining whether the predicate facts, i.e., the prior acts of domestic abuse, had been proved. Interestingly, had the standard instruction, CALJIC 2.50.1, which provides that the prior offenses must be proved by a preponderance, been given, the instructions would have violated due process under the analysis used in Gibson.

The court of appeal held that this claim was waived because defense counsel asked that the instruction not be given "to avoid misleading the jury about the standard of proof." Ex. D at 8. That is, the court held that the claim was procedurally defaulted. A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

The Ninth Circuit has recognized that the California contemporaneous objection rule is an adequate and independent ground for a state court ruling and therefore affirmed the denial of a federal petition on procedural default grounds in a case where, as here, counsel did not object. Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir.

1 | 1999). This claim therefore is procedurally defaulted, and because petitioner has not
2 | attempted to show cause and prejudice or a miscarriage of justice, is barred.
3 |      The claim also is without merit. Without a specific instruction telling them what
4 | standard of proof to use in deciding whether the previous acts of domestic abuse had
5 | been proved, it is clear that the jury would have used the "beyond a reasonable doubt"
6 | standard. The trial court told the jury on multiple occasions that it needed to use the
7 | beyond a reasonable doubt standard. For example, the court instructed the jury on the
8 | general reasonable doubt standard and that it must be used in determining whether the
9 | petitioner was the person who committed the crime (CALJIC 2.90). The court, pursuant
10 | to CALJIC 2.01, instructed the jury that before an inference may be drawn, the facts
11 | which it rests on must be proven beyond a reasonable doubt. RT (Reporter's transcript)
12 | at 1191. Further, the court told the jury to use the reasonable doubt standard when
13 | evaluating whether the homicide was excusable or justifiable (CALJIC 5.15), when
14 | determining if petitioner personally used a firearm in commission of the offense
15 | (CALJIC 17.19), and when determining if the crime was manslaughter or second-
16 | degree murder (CALJIC 8.71). CT at 315-338. The court also clearly instructed the jury
17 | that its instructions were to be considered as a whole and in light of all the other
18 | instructions (CALJIC 1.01). Id. at 255.
19 |      Thus, when considering the context in which the trial court issued CALJIC
20 | 2.50.02, the jury was told multiple times to use the beyond a reasonable doubt standard.
21 | See Estelle, 502 U.S. at 72 (court must view instructions as a whole and in context with
22 | the trial record). Further, it was explicitly told not to draw an inference unless the fact on
23 | which the inference rests was proved beyond a reasonable doubt – this instruction is
24 | particularly persuasive because CALJIC 2.50.02 allows the jury to draw an inference
25 | from past domestic violence acts and the court told the jury to consider each instruction
26 | in light of all other instructions. Because of this and the numerous other times the jury

1  was instructed that it had to use the reasonable doubt standard to convict the petitioner,
2  it is clear that the omission of a specific instruction on the standard applicable to the
3  jury's determination of the predicate acts, did not violate petitioner's rights.  The state
4  appellate courts' rejection of this claim was not contrary to, nor an unreasonable
5  application of, clearly established United States Supreme Court authority.

      3.    CALJIC 17.41.1

Petitioner claims that using CALJIC 17.41.1 violated his due process rights because it deprived the jury of its nullification power and "chilled" the jury's discussions and deliberations by reducing its privacy and creating the fear of punishment for disobeying jurors.  CALJIC 17.41.1 provides:

> The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on [penalty or punishment, or] any [other] improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

The Ninth Circuit has held that there is no "clearly established United States Supreme Court precedent" which establishes that an anti-nullification instruction such as CALJIC 17.41.1 violates a constitutional right. Brewer v. Hall, 378 F.3d 952, 955-56 (9th Cir. 2004). The court therefore held that a California appellate court's rejection of a challenge to 17.41.1 could not be contrary to, or an unreasonable application of, clearly established Supreme Court authority.  Id. at 956.[1]   In light of Brewer, that the trial court gave CALJIC 17.41.1 cannot be the basis for federal habeas relief.

---

[1] Juror nullification is not a right under the Constitution, laws or treaties of the United States. Crease v. McKune, 189 F.3d 1188, 1194 (10th Cir. 1999) (noting no right to jury nullification in the context of federal habeas review); cf. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992) (federal defendants are not entitled to jury nullification instructions).  Any instruction that arguably impeded this non-existent right did not violate the Constitution, laws or treaties of the United States and cannot justify habeas relief.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: October 4, 2005.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.02\WILLIAMS307.RUL2

14